IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

UNITED STATES OF AMERICA

vs. CASE NO.: 3:19cr364-ECM

NAYEF AMJAD QASHOU,

Defendant.

* * * * * * * * * * * * * * *

CHANGE OF PLEA

* * * * * * * * * * * * * * *

BEFORE THE HONORABLE WALLACE CAPEL, JR., UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Thursday, July 30, 2020, commencing at 11:02 a.m.

APPEARANCES

FOR THE GOVERNMENT: Mr. Robert K. Nichols
Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
131 Clayton Street
Montgomery, Alabama 36104

FOR THE DEFENDANT: Ms. Sandi Y. Irwin
FEDERAL DEFENDERS
MIDDLE DISTRICT OF ALABAMA
817 South Court Street
Montgomery, Alabama 36104

Proceedings reported stenographically;

transcript produced by computer

(The following proceedings were heard before the Honorable Wallace Capel, Jr., United States Magistrate Judge, at Montgomery, Alabama, on Thursday, July 30, 2020, commencing at 11:02 a.m.)

(Call to order of the Court)

THE COURT: All right. Everyone can hear; correct? All right. Very good.

Now, as I understand, Ms. Irwin, we took a plea before in this case; correct?

MS. IRWIN: Yes, Your Honor.

THE COURT: And what happened with that plea?

MS. IRWIN: Yes. So the previous plea was under an agreement with the government for an 11(c)(1)(A) and 11(c)(1)(C). And when we went to sentencing with Judge Marks, she rejected the plea, and Mr. Qashou withdrew his guilty plea at that time and pleaded not guilty.

THE COURT: All right. So we're coming back now with both (A) and (B); correct? A recommendation, and you'll drop one of the counts; is that correct? He would plead to one count?

MR. NICHOLS: Yes, Your Honor. That's correct.

THE COURT: All right. And that's false statement to a federal agent; correct?

MR. NICHOLS: Yes, Your Honor. That's correct. Under 1001(a)(2), and that's Count 1 of the indictment.

THE COURT: All right. And has he --

He filed a consent; correct, Ms. Fuller, to have this plea taken by video?

THE COURTROOM DEPUTY: Judge, I just forwarded you some documents. Have you had an opportunity to --

THE COURT: I have not yet. Hold on just a minute.

Ms. Fuller, I have the plea agreement and the consent to enter a plea. Are those the two documents that you just sent me?

THE COURTROOM DEPUTY: That's what I received from the federal defender's office. I just forwarded it to you.

THE COURT: All right. Ms. Irwin, do we have a consent to proceed or was a consent entered earlier to proceed by way of video conference?

MS. IRWIN: I believe that is the consent that you should have before you, Your Honor.

THE COURT: The one I have before me right now I think is just simply the one that says he consents to take the plea before a magistrate judge.

MS. IRWIN: I apologize, Your Honor. Then that was my error. I only sent the one. I did indicate in the original request for the hearing that he consented to plead by video teleconference; but if you would like, I can forward a consent for that specifically to the office and have him sign it and forward it to you.

THE COURT: All right. If you would do that for us.

In the meantime, Mr. Qashou, you are taking a plea today; correct, sir?

THE DEFENDANT: Yes. That's correct, Your Honor.

THE COURT: And you wish to -- you filed a form for consent which says you consent to have myself as United States Magistrate Judge conduct the proceedings as required by Rule 11 of the Federal Rules of Criminal Procedure incident to the taking of the plea and to adjudicate you guilty based upon that plea of guilty. Is that your own independent decision, sir, after fully discussing this with your attorney?

THE DEFENDANT: Yes, it is.

THE COURT: All right.

THE COURTROOM DEPUTY: Judge, can I place under -- I need to place him under oath.

THE COURT: All right. Thank you.

(Defendant sworn)

THE COURT: All right. Sir, you've also discussed with your attorney that this plea would be taken by videoconference. You understand that you would have a right to have it taken in person; but you've decided, based upon the CARES Act and the COVID crisis that we're having, that you would prefer to have this by video conference; is that correct, sir?

THE DEFENDANT: That is correct, Your Honor.

THE COURT: All right. Very good.

Secondly, in order to take this plea, the Court would have to find and make a recommendation to the district judge that for specific reasons, a plea or sentencing in this case cannot be further delayed without serious harm to the interest of justice. The Court is making that finding, in that the COVID crisis has been continuing; there are increased cases in Alabama; it has not slowed down since May. In fact, there are more cases now than there were at that point in time. The Court cannot indefinitely put off cases, both the pleas and the sentences, under these circumstances without doing serious harm to the interest of justice, and that the Court would slow down -- the ability to have finality in cases would slow down. So we are making the recommendation, and we -- that recommendation would be that we -- that this case cannot be further delayed without serious harm to the interest of justice, and we are making that recommendation.

Ms. Irwin and all parties would have 14 days after this date, if you object to the proceeding or the finding in this case being made, to object to the district judge.

Are we ready to proceed with the plea at this point in time, Ms. Irwin?

MS. IRWIN: Yes, Your Honor.

THE COURT: All right. And Mr. Nichols, you're also ready to proceed, sir?

MR. NICHOLS: Yes, Your Honor. We are.

THE COURT: All right.

Sir, do you understand that you're under oath and that if you answer any questions falsely, your answers could be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: All right, sir. What is your full name?

THE DEFENDANT: Nayef Amjad Qashou.

THE COURT: And, sir, where were you born?

THE DEFENDANT: I was born in Abu Dhabi in the UAE.

THE COURT: Are you an American citizen?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And how old are you, sir?

THE DEFENDANT: I'm 26.

THE COURT: How far did you go in school?

THE DEFENDANT: I took -- I reached my junior year of college.

THE COURT: All right, sir. Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: I've been receiving mental health treatment through a counselor.

THE COURT: And is that ongoing at this point in time?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right, sir. Are you currently under

the influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT: No, I'm not.

THE COURT: Is there anything that would prevent you from fully understanding what is happening here today?

THE DEFENDANT: No.

THE COURT: All right. Now, sir, have you received a copy of the indictment in this case -- that would be the written charges made against you in this case -- and have you fully discussed those charges and the case in general with your attorney, Ms. Irwin?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, Mr. Qashou, there is a plea agreement in this case. Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Does the plea agreement represent in its entirety any understanding that you have with the government?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you understand the terms of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Sir, has anyone made any promises or assurances that are not in the plea agreement to persuade you to accept the agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened you in any way to persuade you to accept the agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Sir, do you understand that the terms of the plea agreement are merely recommendations to the Court and that the Court can reject the recommendations without permitting you to withdraw your plea of guilty and could impose a more severe sentence than you may have anticipated?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, sir -- Ms. Irwin, were all formal plea offers by the government conveyed to the defendant?

MS. IRWIN: Yes, they were, Your Honor.

THE COURT: Thank you.

Sir, has anyone attempted in any way to force you to plead guilty or otherwise threatened you?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone made any promises or assurances of any kind to get you to plead guilty other than what's contained in the plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty of your own free will and because you are guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, sir, do you understand that the offense to which you are pleading guilty is a felony offense, and that if the plea is accepted and you're adjudged guilty of that offense, such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, do you also understand that if you are placed on a term of supervised release and if you violated the conditions of supervised release, you could receive an additional amount of time in prison?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right, sir. As I understand it, you would be pleading guilty to Count 1, false statement to a federal agency. That carries a term of imprisonment of no more than eight years, a fine of not more than $250,000 or twice the value of the property involved in the transaction, whichever is greater, or both the fine and imprisonment, a term of supervised release of not more than three years, an assessment fee of $100, and an order of restitution. Count 2 would be dismissed at the time of sentencing if the plea is accepted.

Is that your understanding of the charge and the possible penalties that you're facing, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Sir, have you discussed with your attorney how the advisory sentencing guidelines apply in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the Court will not be able to determine the advisory guideline range for this case until after a presentence report has been completed and you and the government have had an opportunity to challenge the reported facts and the calculation of the guidelines as reported by the probation officer, and that the sentence ultimately imposed may be different than any estimate your attorney has given you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that after the advisory guideline range has been determined, the Court has the authority in some circumstances to depart upward or downward from that range, and the Court will examine other statutory sentencing factors pursuant to 18 U.S.C. Section 3553(a) that may result in a sentence that's either greater or lesser than the advisory guideline range?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right, sir. Do you also understand that parole has been abolished and that if you were sentenced to

prison, you could not be released on parole?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Qashou, do you understand that under some circumstances, you or the government may have the right to appeal any sentence that the Court imposes?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that your plea agreement contains a waiver of your right to appeal or collaterally attack your sentence except on limited circumstances, that being ineffective assistance of counsel or prosecutorial misconduct or if the government appeals your sentence? Those would be the only factors that would allow you to do so. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Have you discussed with your attorney your right to go to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you have the right to plead not guilty to the offense charged against you, and if you persist in that plea you would be presumed to be innocent, and the government would have to prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand you would have a right to a trial by jury?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would have the right to assistance of counsel for trial and every other stage of the proceeding, the right to see and hear all witnesses and have them cross-examined on your behalf, the right on your own part to decline to testify unless you voluntarily elected to do so, and the right to compel the attendance of witnesses to testify in your behalf?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand should you decide not to testify or put on any evidence, those facts could not be used against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you further understand that by entering a plea of guilty, if the plea is accepted there will be no trial and you will have waived, or given up, your right to trial as well as the other rights associated with trial as I've described them?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right, sir. Now, sir, you understand that if you plead guilty, a presentence report will be prepared and the Court will decide whether to accept or reject the plea agreement. If the Court decides to reject the plea agreement, you will be given an opportunity to withdraw your plea and change it to not guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Nichols, would you provide us with the elements of the offense to which he's pleading guilty, please.

MR. NICHOLS: Yes, Your Honor. Thank you.

Under Count 1 of the indictment, 18 U.S.C. 1001(a)(2), the defendant must have made the statement as charged; the statement must have been false; the falsity must have concerned a material matter; the defendant must have acted willfully, knowing the statement was false; the false statement must have been made or used for a matter within the jurisdiction of a department or agency of the United States; and the false statement must have involved international terrorism.

THE COURT: Thank you, sir.

Ms. Irwin, would you review those facts with your client so we can determine if there is a factual basis for the plea.

MS. IRWIN: Yes, Your Honor.

THE COURT: Thank you.

MS. IRWIN: Mr. Qashou, on or about September 26th of 2018, were you interviewed by FBI agents in Auburn, Alabama?

THE DEFENDANT: Yes.

MS. IRWIN: Your Honor, we would stipulate that Auburn is in the Middle District of Alabama.

THE COURT: Thank you, Ms. Irwin.

MS. IRWIN: Mr. Qashou, at that time did you understand that you were under investigation related to international terrorism?

THE DEFENDANT: Yes.

MS. IRWIN: And during the interview, did you tell FBI agents that you had compiled educational videos and given them to other people on flash drives?

THE DEFENDANT: Yes.

MS. IRWIN: Did you tell the FBI agents about a series of videos that were on the flash drives?

THE DEFENDANT: Yes.

MS. IRWIN: Were there, in fact, more videos on the flash drives than the ones you told them about?

THE DEFENDANT: Yes.

MS. IRWIN: On the next day after the interview, did you email one of the FBI agents a list of the videos you had talked about in the interview?

THE DEFENDANT: Yes.

MS. IRWIN: Were there videos on the flash drives other than the ones that were listed in the email?

THE DEFENDANT: Yes, there were.

MS. IRWIN: But you willfully chose not to tell the FBI agents about those other videos; is that correct?

THE DEFENDANT: Yes.

MS. IRWIN: And were the videos on the flash drives

that you did not tell the FBI about related to international terrorism?

THE DEFENDANT: Yes.

MS. IRWIN: Is the government and the Court satisfied that the factual basis has been laid, Your Honor?

THE COURT: I take it, Ms. Irwin, that omissions would count as a lie under the statute; is that correct?

MS. IRWIN: The allegation is that he told -- the allegation is that he omitted some facts when he was speaking with the FBI.

THE COURT: All right.

MR. NICHOLS: Your Honor, if I may.

THE COURT: Mr. Nichols, I want to make sure that that would be -- fit within the elements of the crime.

MR. NICHOLS: Your Honor, I believe that that would, but it is -- we have also alleged that he specifically told the agent that he only sent the amount of -- or the videos that he told them about and not the rest.

THE COURT: All right. You agree with that, Ms. Irwin?

MS. IRWIN: That is the allegation. Yes, Your Honor.

THE COURT: All right. The government's satisfied; correct, Mr. Nichols?

MR. NICHOLS: Yes, Your Honor.

THE COURT: All right. Sir, how do you plead to the charge, guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: All right. It is the finding of the Court in the case of United States versus Nayef Amjad Qashou that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charge and the consequences of the plea, and that the plea is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted, and the defendant is now adjudged guilty of the offense.

Do they already have a plea -- a report that is made, a sentencing report? Does that need to be updated?

MS. IRWIN: We do have a presentence report in this case, Your Honor.

THE COURT: All right. Is there a need -- is there going to be a need for another one, an amended one?

MS. IRWIN: I do not think that Mr. Qashou believes there should be an amended one, Your Honor.

THE COURT: Mr. Nichols, do you think there's a need for one?

MR. NICHOLS: Your Honor, I'm honestly unsure whether probation needs to update the portion that discusses what effect the plea agreement has. But that is probably the only paragraphs, so I'm not sure if probation has a policy to update that in this type of situation.

THE COURT: Mr. Nichols, would you let them know that there already is a report here and that they can fast track the sentencing in this case?

MR. NICHOLS: Yes, Your Honor.

THE COURT: All right. Anything else at this point in time other than going -- I still have to go through with him a few factors, including the fact that the presentence report will be prepared by the probation department.

Sir, you're going to be asked to give information for that report. You've done it before. And you understand you have the right to have your attorney with you at the time that that interview takes place.

Further, prior to the time of your sentencing, you'll be able to review that report. And if you find that there's any objections that you have to the facts or to the calculation of the guidelines, you may file objections with the Court. At the time of sentencing, both yourself and your attorney will be able to speak on your behalf. Any victims of the offense will also be afforded an opportunity to be heard.

Are both parties satisfied with the Rule 11 colloquy?

MS. IRWIN: Yes, Your Honor.

MR. NICHOLS: Yes, Your Honor.

THE COURT: All right. Very good. Anything else at this point in time?

MS. IRWIN: Nothing further, Your Honor.

THE COURT: All right. Thank you.

(Proceedings concluded at 11:22 a.m.)

* * * * * * * * * * * * *

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of the proceedings in the above-entitled matter.

This 10th day of January, 2022.

/s/ Patricia G. Starkie
Registered Diplomate Reporter
Certified Realtime Reporter
Official Court Reporter