IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

UNITED STATES OF AMERICA

vs. CASE NO.: 3:19cr364-ECM

NAYEF AMJAD QASHOU,

Defendant.

* * * * * * * * * * * * * * *

ARRAIGNMENT and CHANGE OF PLEA

* * * * * * * * * * * * * * *

BEFORE THE HONORABLE WALLACE CAPEL, JR., UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Tuesday, February 11, 2020, commencing at 10:51 a.m.

APPEARANCES

FOR THE GOVERNMENT: Mr. Robert K. Nichols III
Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
131 Clayton Street
Montgomery, Alabama 36104

FOR THE DEFENDANT: Ms. Sandi Y. Irwin
FEDERAL DEFENDERS
MIDDLE DISTRICT OF ALABAMA
817 South Court Street
Montgomery, Alabama 36104

Proceedings recorded by digital sound recording;

transcript produced by stenography and computer.

(The following proceedings were heard before the Honorable Wallace Capel, Jr., at Montgomery, Alabama, on Tuesday, February 11, 2020, commencing at 10:51 a.m.)

THE COURT: Good morning, everyone.

All right. Last time we were here, Ms. Irwin, because we had some questions about competency, we didn't do the -- we didn't do the arraignment. So I think we need to arraign him at this point in time.

He has reviewed, I know, the initial appearance and everything. We went over his rights, and he had reviewed the indictment. Does he waive formal reading of the indictment?

MS. IRWIN: Yes, Your Honor.

THE COURT: All right. And does he wish to enter a plea at this point in time?

MS. IRWIN: Yes, Your Honor.

THE DEFENDANT: I plead not guilty.

THE COURT: All right. Did he receive all of the discovery in this case already, and you've been able to go over that discovery?

MS. IRWIN: We've received most of the discovery. The government can explain. There's a little bit left.

MR. NICHOLS: Your Honor, discovery was voluminous. We've given three productions to the defense, and we've spoken with them now about the fourth production, which is all but ready. It includes 122 hours of video and audio, so we wanted

to work with them to figure out the best way to turn that over. But it's ready to turn over, Your Honor.

THE COURT: All right. Well, we're ready to go forward, as I understand it, with a plea today; correct?

MS. IRWIN: Yes, Your Honor.

MR. NICHOLS: Yes, Your Honor.

THE COURT: Is there anything within that material, counsel, that you feel is necessary for your understanding of the case?

MS. IRWIN: No, Your Honor. We have sufficient discovery at this point to enter a plea.

THE COURT: All right. So we can go forward at this point in time you feel?

MS. IRWIN: Yes, Your Honor.

THE COURT: All right.

MR. NICHOLS: And, Your Honor, for the record, that audio and video, we've already turned over transcripts of that. It was just the audio and video itself had to have some redactions and modulations of voices and things done because of the sources and inputs and that sort of thing.

THE COURT: Yes.

MR. NICHOLS: So I believe they have the transcripts of that audio video already.

THE COURT: All right. Very good, then.

(Defendant sworn.)

THE COURT: All right. We're proceeding under (c)(1)(A) and (c)(1)(C); correct?

MS. IRWIN: Yes, Your Honor.

THE COURT: That they would dismiss Count 2 and not bring other counts, and (c)(1)(C) as far as what the sentence would be?

MR. NICHOLS: Yes, Your Honor. That's correct.

THE COURT: All right. And he would be pleading to Count 1, false statement to a federal agency, which carries a term of imprisonment of not more than eight years, a fine of not more than $250,000 or twice the value of the property involved in the transaction, whichever is greatest, or the fine and imprisonment, a term of supervised release of not more than three years, an assessment fee of $100, and there could be an order of restitution; correct?

MR. NICHOLS: Yes, Your Honor. That's correct.

THE COURT: All right. Very good.

All right. Sir, do you understand you're under oath, and that if you answer any questions falsely, your answers could be used against you later in another prosection for perjury or making a false statement?

THE DEFENDANT: I understand.

THE COURT: All right, sir. What is your full name?

THE DEFENDANT: Nayef Qashou. Full name for the middle is Nayef Amjad Qashou.

THE COURT: All right, sir. And where were you born?

THE DEFENDANT: I was born in Abu Dhabi in UAE.

THE COURT: All right. Now, are you a U.S. citizen?

THE DEFENDANT: Yes, I am.

THE COURT: All right, sir. And how old are you?

THE DEFENDANT: I'm 25 years old.

THE COURT: How far did you go in school?

THE DEFENDANT: Until my junior year.

THE COURT: All right. Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No, I haven't received any treatment.

THE COURT: All right, sir. Are you currently under the influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT: I am not.

THE COURT: Have you received a copy of the indictment in this case -- that would be the written charges made against you in this case -- and have you fully discussed those charges and the case in general with your attorney?

THE DEFENDANT: Yes.

THE COURT: And are you fully satisfied with the counsel, representation, and advice given to you in this case?

THE DEFENDANT: Yes.

THE COURT: Sir, there's a plea agreement in this case.

Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes.

THE COURT: Does the plea agreement represent in its entirety any understanding that you have with the government?

Let's go over that one. And if you don't understand any of these questions, you ask me to explain it to you. All right? This one always sort of catches people.

The plea agreement that you have here, your counsel and the counsel for the government sat down and had discussions and reached an agreement on how they think that this case should resolve itself; correct?

THE DEFENDANT: Correct.

THE COURT: And everything that they agreed to, they reduced to writing, which would be this plea agreement; correct?

THE DEFENDANT: Correct.

THE COURT: This is the entirety of everything they agreed to. There's no other documents or oral understandings. This is all of it, correct, the entirety of your understanding with the government of how the case should be resolved and what you've agreed to and they've agreed to?

THE DEFENDANT: Yes.

THE COURT: All right, sir. Did you understand the terms of the plea agreement?

THE DEFENDANT: I understand them.

THE COURT: Has anyone made any promises or assurances that are not in the plea agreement to persuade you to accept the agreement?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you in any way to persuade you to accept the agreement?

THE DEFENDANT: No.

THE COURT: Now, do you understand if the Court chooses not to follow the terms of the plea agreement, you would be given an opportunity to withdraw your plea of guilty and change it to not guilty? But if for some reason you chose not to withdraw your plea, the Court could impose a more severe sentence without being bound by the terms of the plea agreement?

THE DEFENDANT: Yes, I understand.

THE COURT: Counsel, were all formal plea offers by the government conveyed to the defendant?

MS. IRWIN: Yes, Your Honor.

THE COURT: Thank you very much.

Sir, has anyone attempted in any way to force you to plead guilty or otherwise threatened you?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises or assurances of any kind to get you to plead guilty other than what's contained in the plea agreement?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will and because you are guilty?

THE DEFENDANT: Yes.

THE COURT: Now, you understand that the offense to which you are pleading guilty is a felony offense and that if you're convicted -- if the plea is accepted and you're convicted of this offense, that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with your attorney --

Before we go through that, you understand, sir, if you were placed on a term of supervised release and if you violated the conditions of supervised release, you could be given an additional amount of time in prison? It's considered a new offense. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: All right, sir. Have you discussed with your attorney how the advisory sentencing guidelines might apply in your case?

THE DEFENDANT: Yes.

THE COURT: You understand that the Court will not be able to determine the advisory guideline range for this case until after a presentence report has been completed and you and

the government have had an opportunity to challenge the reported facts and the calculation of the guidelines as recorded by the probation officer, and that the sentence ultimately imposed may be different than any estimate your attorney has given you?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that after the initial guideline range has been determined, the Court has the authority in some circumstances to depart upward or downward from that range, and the Court will examine other statutory sentencing factors pursuant to 18 U.S.C. Section 3553(a) that may result in the imposition of a sentence that's either greater or lesser than the advisory guideline range?

THE DEFENDANT: Yes.

THE COURT: Sir, do you understand that parole has been abolished and that if you were sentenced to prison, you could not be released on parole?

THE DEFENDANT: Yes.

THE COURT: All right, sir. Now, do you understand that under some circumstances, you or the government may have the right to appeal any sentence that the Court imposes?

THE DEFENDANT: Yes.

THE COURT: All right. Do you know what an appeal is, sir? Have you discussed that with your attorney?

THE DEFENDANT: Yes.

THE COURT: All right, sir. Now, do you understand

that your plea agreement contains a waiver of your right to appeal or collaterally attack your sentence except on certain limited grounds? And that would be ineffective assistance of counsel or prosecutorial misconduct or if the government appeals your sentence pursuant to 18 U.S.C. Section 3742(a). Those would be the only reasons in which you would be allowed to waive appeal or to collaterally attack your sentence. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: All right, sir. Have you discussed with your attorney your right to proceed to trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand, sir, that you have the right to plead guilty to any offenses charged against you, and if you persist in that plea, you would have a right to a trial by jury?

MR. NICHOLS: Not guilty.

THE COURT: Not guilty. I'm sorry. Thank you. Let's go back over it.

Do you understand that you have the right to plead not guilty to any of the offenses charged against you, and if you persist in that plea, you would have a right to a trial by jury?

THE DEFENDANT: Yes.

THE COURT: Do you understand at trial you would be presumed to be innocent, and the government would have to prove

your guilt by proof beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would have the right to assistance of counsel at trial and every other stage of the proceedings and the right to see and hear all witnesses and have them cross-examined on your behalf?

THE DEFENDANT: Yes.

THE COURT: The right on your own part to decline to testify unless you voluntarily elected to do so and the right to compel the attendance of witnesses to testify in your behalf?

THE DEFENDANT: Yes.

THE COURT: All right, sir. You understand should you decide not to testify or put on any evidence, those facts could not be used against you?

THE DEFENDANT: Yes.

THE COURT: All right. In other words, you could sit there if there was a trial and not do anything. Your lawyer wouldn't have to do anything, you wouldn't have to do anything, and the government could not use those facts against you. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: All right, sir. Now, do you understand by entering a plea of guilty, if the plea is accepted by the Court, there will be no trial and you will have waived or given up your right to trial as well as the other rights associated with trial

as I've just described them?

THE DEFENDANT: Yes.

THE COURT: All right, sir. Now, sir, do you understand that if you plead guilty, a presentence report will be completed and the Court will consider whether to accept or reject the plea agreement? If the Court decides to reject the plea agreement, you will be given an opportunity to withdraw your plea and change it to not guilty?

THE DEFENDANT: Yes.

THE COURT: All right. Now, Mr. Nichols, would you provide the Court with the elements of the offense to which he would be pleading guilty, please.

MR. NICHOLS: Yes, Your Honor. If Mr. Qashou pleads guilty to Count 1, which is Title 18 United States Code Section 1001(a)(2), the government would have to prove -- excuse me. If we had to prove the case, the government would have to prove that the defendant made the statement as charged, the statement was false, the falsity concerned a material matter, the defendant acted willfully, knowing that the statement was false, the false statement was made or used for a matter within the jurisdiction of a department or agency of the United States, and in this case the false statement involved international terrorism.

THE COURT: Counsel, would you go over those elements with your client so we can determine if there is a factual basis

for the plea.

MS. IRWIN: Yes, Your Honor.

THE COURT: Thank you.

MS. IRWIN: On or about September 26th of 2018, were you interviewed by FBI agents in Auburn, Alabama?

THE DEFENDANT: Yes.

MS. IRWIN: And we would stipulate that Auburn is in the Middle District of Alabama.

THE COURT: Thank you, counsel.

MS. IRWIN: At that time, did you understand that you were under investigation related to international terrorism?

THE DEFENDANT: Yes.

MS. IRWIN: During the interview, did you tell FBI agents that you had compiled educational videos and given them to other people on flash drives?

THE DEFENDANT: Yes.

MS. IRWIN: Did you tell the FBI agents about a specific series of videos that were on the flash drives?

THE DEFENDANT: Yes.

MS. IRWIN: Were there, in fact, more videos on the flash drives than the ones that you told the FBI about?

THE DEFENDANT: Yes.

MS. IRWIN: On the next day after that interview, did you e-mail one of the FBI agents a list of the videos you had talked about in the interview?

THE DEFENDANT: Yes.

MS. IRWIN: Were there videos on the flash drives other than the ones that were listed in the e-mail that you sent?

THE DEFENDANT: Yes.

MS. IRWIN: But you willfully chose not to tell the FBI agents about these other videos; is that correct?

THE DEFENDANT: Yes.

MS. IRWIN: And were the videos on the flash drives that you did not tell the FBI about related to international terrorism?

THE DEFENDANT: Yes.

THE COURT: All right. Is it my understanding that this isn't so much of a statement that was made that was false, but a failure to give all the information that he was aware of?

MR. NICHOLS: Yes, sir. We believe that it was a false statement, and that he only told a partial truth, and that the videos that he did not admit to on that date were material to the investigation because they were ISIS propaganda videos and others related to international terrorism.

THE COURT: All right. But he did -- he told them that there were videos, but he just failed to tell them the total amount of the videos that he was aware of; correct?

MR. NICHOLS: Yes, sir. The total amount and the nature of the ones that he did not admit to were different than the nature of the ones he did.

THE COURT: All right. Mr. Qashou, how do you plead to the charge, sir, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It's the finding of the Court in the case of United States versus Nayef Amjad Qashou that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted, and the defendant is now adjudged guilty of the offense.

Sir, there's going to be a written presentence report prepared by the probation department to assist the judge at the time of sentencing. You will be asked to give information for the report, and you have the right to have your attorney present at the time you do so. Prior to the time of your sentencing, both yourself and your counsel will have an opportunity to review that report, and if you have any objections to the calculation of the guidelines or the factual information in that report, you may file those objections with the Court.

At the time of your sentencing, both yourself and your counsel will have an opportunity to speak on your behalf, and any victims of the offense will also be given an opportunity to be heard. You're going to receive a separate order which will

tell you the date and time of your sentencing.

Do you have any questions about that?

THE DEFENDANT: No, I don't have any questions.

THE COURT: All right, sir. I've had pretty long discussions with pretrial concerning whether to release you at this point in time pending the sentence.

What's the government's position in this matter?

MR. NICHOLS: Your Honor, we previously filed a motion to detain in this matter. Due to the plea agreement and the things that Mr. Qashou has done and participated in since the time that we filed that motion, we would withdraw our motion to detain at this time; however, we would like restrictions or conditions on his release pending sentencing.

THE COURT: Counsel?

MS. IRWIN: Mr. Qashou has complied with everything this Court has asked as well as the government up until this point. And even when he was under investigation by the FBI, he was fully compliant. There's a period of time in December of 2015, for instance, when he was asked to report daily to the FBI, and he did so. Even though they had taken his phone, he made phone calls in to the FBI every single day on someone else's phone as requested. There's no reason to believe that Mr. Qashou will not continue to comply with any conditions that are fashioned on his release. So we ask that he be released today with the least restrictive conditions possible, Your

Honor.

THE COURT: The Court is concerned about some of the statements that were made in this case that the parties are aware of.

MS. IRWIN: I understand the concerns about some of those statements, but I think that we -- oh, I apologize.

THE COURT: There's also -- I'm thinking through this at the time, that there's also information that he's a low risk of violence. However --

Both you guys want to jump right in there, don't you?

That is based upon the reports that we've all reviewed.

I do want to say that the Court is going to somewhat strike a balance here. I am going to release him on location monitoring, and I want him -- it's basically going to be on home detention under location monitoring. So if he has specific places that he wants to be able to go, he's going to have to check with pretrial services prior to doing so, and his location will be monitored at all times.

I also want him to participate in a program of mental treatment that's approved by the pretrial services. I think that intensive treatment will be of benefit to the defendant. He will be under the other standard conditions. I want his passport turned in immediately, and he is not to seek to obtain a new passport. He's not to travel out of the state of Alabama, in fact, without the Court's permission.

He will be staying at his mother's house? Is that my understanding?

MS. IRWIN: Yes, Your Honor. His mother is present. She'll be taking him home to go to the home in Auburn where she lives with his two youngest siblings.

THE COURT: Ma'am, would you stand, please? Good morning. Thank you for being here.

I know you've been very supportive this entire time. I know, from looking at other things -- the reports and other things that we looked at, that you will be supportive. I want your assurance that if there are any issues at all in not following the Court's instructions, that you will immediately report that to pretrial services and to the Court.

MRS. QASHOU: Yes, sir.

THE COURT: All right. Thank you very much.

Any other conditions that you want?

PROBATION OFFICER MARSHALL: I think you covered them all, Judge.

THE COURT: All right.

Mr. Nichols, do you still wish to add anything?

MR. NICHOLS: No, Your Honor. The only thing I was going to say, our biggest concern in this case would have been the issue of flight risk, just because he travels around so much --

THE COURT: Which is why we're doing the location

monitoring.

MR. NICHOLS: Yes, sir. Thank you, sir.

THE COURT: All right. Would you have him sign those papers, please. He's not to be released -- I understand that they probably will hook him up with location monitoring today; however, I want that passport turned in at the time that takes place so that he doesn't have that ability to travel.

MS. IRWIN: And we've already made that arrangement with probation and his mother.

THE COURT: Very good.

(Brief pause in the proceedings)

THE COURT: All right. Anything else from either party?

MR. NICHOLS: No, Your Honor, not from the government.

MS. IRWIN: Nothing further, Your Honor.

THE COURT: All right. Thank you all.

(Proceedings concluded at 11:17 a.m.)

* * * * * * * * * * * * *

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript to the best of my ability from the official sound recording of proceedings in the above-entitled matter.

This 13th day of August, 2024.

/s/ Patricia G. Starkie
Registered Diplomate Reporter
Certified Realtime Reporter
Official Court Reporter