IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

UNITED STATES OF AMERICA

vs. CASE NO.: 3:19cr364-ECM

NAYEF AMJAD QASHOU,

Defendant.

* * * * * * * * * * * * * * *

TELEPHONE STATUS CONFERENCE

* * * * * * * * * * * * * * *

BEFORE THE HONORABLE EMILY C. MARKS, UNITED STATES DISTRICT JUDGE, at Montgomery, Alabama, on Tuesday, April 27, 2020, commencing at 3:27 p.m.

APPEARANCES

FOR THE GOVERNMENT: Mr. Joshua J. Wendell
Mr. Robert K. Nichols III
Assistant United States Attorneys
OFFICE OF THE UNITED STATES ATTORNEY
131 Clayton Street
Montgomery, Alabama 36104

FOR THE DEFENDANT: Mr. Stephen P. Ganter
Ms. Sandi Y. Dawson
FEDERAL DEFENDERS
MIDDLE DISTRICT OF ALABAMA
817 South Court Street
Montgomery, Alabama 36104

Proceedings recorded by digital sound recording;

transcript produced by stenography and computer.

(The following proceedings were heard before the Honorable Emily C. Marks, United States District Judge, at Montgomery, Alabama, on Tuesday, April 27, 2020, commencing at 3:27 p.m.)

THE COURT: Good afternoon. We are on the record in U.S. versus Qashou, 19cr364.

Just for the record, who do we have on the line for the United States?

MR. WENDELL: Joshua Wendell for the United States, Your Honor.

THE COURT: Good afternoon. And who do we have on the line for Mr. Qashou?

MR. GANTER: That would be Stephen Ganter and Sandi Irwin on behalf of Nayef Qashou, Your Honor.

THE COURT: Good afternoon. All right. I wanted to get everybody --

Well, let me say this. Other than those attorneys and court personnel, is there anybody else on the line?

(No response.)

THE COURT: All right. I set this for a telephone status conference to discuss --

Did somebody join?

MR. NICHOLS: Yes, Your Honor. This is Robert Nichols.

THE COURT: Hello, Mr. Nichols. And you're on for the United States?

MR. NICHOLS: Yes, Your Honor.

THE COURT: All right.

We have an upcoming date for Mr. Qashou's sentencing. And in light of the ongoing pandemic, I just wanted to make sure we were all on the same page about how these proceedings would happen. And I'm going to assume, because we've got a binding plea for time served in this case, that everybody agrees we need to move forward with this. There's no need to extend the deadline for the sentencing. Am I correct about that?

MR. GANTER: Well, I guess -- so I'm assuming --

Stephen Ganter, Your Honor, on behalf of Mr. Qashou.

If the Court is I guess -- typically we would want to do this in person; however, if the Court is indicating that it's going to accept the plea, then certainly I don't think we're going to have any objections to doing it by video teleconference.

THE COURT: Well, I'm not in a position today to say whether or not I'm going to accept the binding plea. I just noted that when I looked at the plea agreement, the binding plea agreed upon for time served was a little too far out for me to have all the documents and information I need to make that determination. But I will say it's my practice, if I'm not going to accept a binding plea, to let you-all know in advance of the sentencing.

But because of this, what we're faced with with the

current situation is that when we have a proceeding like this that is scheduled, we can either delay it and continue it, because the defendant wants to have it conducted in person and we're not in a position right now -- depending upon how many people would be involved in the sentencing, whether it would involve transport of somebody in and out of a jail or that type of thing -- to do it in person. And so we can either do it by video conference, we can do it to a limited degree with having some people appear in person and some people appear by video conference, or we can just continue it. And I wanted to get everybody on the line to discuss those different options and what everybody's position is about it.

So, Mr. Ganter or Ms. Irwin, let me hear from either one of you about what your position is from the defendant's point of view about the best way to move forward. Let's assume for the purposes of this discussion that we will move forward with the sentencing. How do you propose that it be conducted?

MR. GANTER: Well, I just think that we would need to conduct it in person, Your Honor. This is a very unusual case, and there is a lot of mitigation that I believe we will need to present. So I would think that -- and it would require witnesses. So I would think that it would be best to do it in person, and I would think that we would need a continuance.

THE COURT: All right. Mr. Wendell or Mr. Nichols, what's the government's position?

MR. NICHOLS: Yes, Your Honor. This is Robert Nichols.

We have discussed this with the defense, and, again, we agree that it is and most likely will be a very nuanced kind of sentencing with a lot of issues involved, especially if the defense is planning on calling witnesses. It probably is better to handle this in person.

THE COURT: Well, my crystal ball is on the fritz, so I can't really anticipate what the world is going to look like on May the 13th. I have to imagine it's going to look pretty similar to how things look today, but it's difficult to make that determination, I guess, at this standpoint.

I think if everybody is in agreement that this needs to be conducted in person, and we are only talking about roughly a two-week period from today, I think, based on what you've told me, the better course of action is to continue this for a period of time to enable everybody who needs to come to the sentencing to be able to come to the courthouse and be in the courtroom for the proceedings.

Is that what I'm hearing?

MR. GANTER: That's what you're hearing from Mr. Qashou, Your Honor.

MR. NICHOLS: Yes, Your Honor. The government agrees.

THE COURT: Okay. Any thoughts about how far out the sentencing needs to be?

MR. GANTER: This is Stephen Ganter again on behalf of

Mr. Qashou. I think what we would like to do is first request a 30-day continuance and just see where we are after those 30 days.

THE COURT: All right. Mr. Wendell, Mr. Nichols, do you agree?

MR. NICHOLS: Yes, Your Honor, we do.

THE COURT: All right. I'm going to set this off -- we'll have to look at the calendar. It will be a roughly 30-day continuance, and then we can revisit that. If we need to reschedule it for some other reason, we can look at it at that time. But I'll go ahead and enter an order setting it off for a roughly 30-day period, and then let's just see what happens. In the interim, hopefully, we'll all be able to be back to business as usual.

MR. GANTER: Yes, Your Honor.

MR. NICHOLS: Yes, Your Honor. Thank you.

THE COURT: All right. And just to clarify, when you say a 30-day continuance, you mean 30 days from the date of the setting, meaning 30 days from May 13th?

MR. GANTER: That's correct, Your Honor.

THE COURT: All right. I'll get an order out as soon as possible. And in the interim, if anything significant changes, don't hesitate to alert the Court to it, but hopefully we'll see you-all sometime in June.

MR. GANTER: Very well, Your Honor. Thank you.

(Proceedings concluded at 3:34 p.m.)

* * * * * * * * * * * * *

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript to the best of my ability from the official sound recording of proceedings in the above-entitled matter.

This 20th day of August, 2024.

/s/ Patricia G. Starkie
Registered Diplomate Reporter
Certified Realtime Reporter
Official Court Reporter