RECEIVED
2026 APR 16 A 11: 11
TRACY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-cr-00364-ECM-KFP |
| | ) | |
| NAYEF AMJAD QASHOU, | ) | |
| | ) | |
| Petitioner/Defendant. | ) | |

# DEFENDANT'S FOURTH SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PENDING NEW-TRIAL FILINGS, SPECIFICALLY ADDRESSING NEWLY DISCOVERED EVIDENCE

## TABLE OF CONTENTS

I. Federal Law Governing Newly Discovered Evidence, and the Scope of Relief Requested .......... 11

II. Operative Filing, Timeliness, and Relationship to Document 135 .......... 14

III. The Strongest and Most Important Newly Discovered Evidence First Appeared in Document 26 and Document 26-1 .......... 14

A. Later-Obtained Interview Transcript Reflecting an Estimate of Roughly Eighty Videos .......... 16

B. Later-Obtained 2018 FD-302 and Follow-Up Email Reflecting That the List Sent After the 2018 Interview Concerned Videos “From the Series” .......... 17

C. “Comments on the PSR” and Related Declarations in Document 26-1 .......... 18

IV. Document 47 Was Not a New Evidentiary Submission, but It Materially Clarified the Theory of the Claim ............................................................ 18

V. Document 121 Identified Additional Evidence and Correctly Treated Document 26-1 as the Initial Evidentiary Foundation ..................................... 19

A. Document 121's Exhibit 2: Actual Innocence Declaration Clarifying the Interview Chronology and the Exculpatory Significance of the Later-Produced Transcript ......................................................................... 19

B. Document 121's Exhibit 3: The September 1, 2019 Unsent Draft Letter ........................................................................................................ 20

C. Document 121's Exhibit 4: The November 2019 BOP Intake Records ........................................................................................................ 21

VI. Document 124 Was an Authenticating and Clarifying Declaration, Not a Standalone Newly Discovered Document, but It Materially Strengthened the Evidentiary Record ........................................................................... 21

VII. Document 122, as Limited and Clarified by Document 129, Contains Both Important Factual Evidence and Corroborative Context ................................ 22

A. Part Two of Document 122: Sworn Factual Testimony About the October 7, 2019 Coercive Episode ........................................................ 22

B. Part One of Document 122: Sworn Contextual Corrections to Public and Governmental Misrepresentations ........................................................ 23

VIII. Document 128, as Amended by Document 130, Further Supports Innocence and Miscarriage of Justice ........................................................ 24

A. Excerpts from the Pre-Sentencing Letter to Judge Marks ........................ 24

B. The 2020 Blog Posts and the Page-66 Declaration Authenticating Them ........................................................ 25

C. Argument Sections of Document 128 ................................................ 25

IX. What in This Record Most Plausibly Counts as "Newly Discovered Evidence," and What Is Better Described as Authenticating, Explanatory, or Gateway Evidence ........................................................ 26

X. Independent Constitutional Significance of the New Evidence: Involuntary and Unknowing Plea ........................................................................ 27

XI. The Evidence Is Material and, Viewed Cumulatively, Could Probably Produce a Different Result ........................................................................ 28

XII. Relief Requested ........................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

Blackledge v. Allison,

431 U.S. 63 (1977) ........................................................................... 27

Bousley v. United States,

523 U.S. 614 (1998) ........................................................................... 13, 30

Brady v. United States,

397 U.S. 742 (1970) ........................................................................... 27

House v. Bell,

547 U.S. 518 (2006) ........................................................................... 13, 25, 29

Kuenzel v. Comm'r, Ala. Dep't of Corr.,

690 F.3d 1311 (11th Cir. 2012) ........................................................... 13

McKay v. United States,

657 F.3d 1190 (11th Cir. 2011) .......................................................... 13

McQuiggin v. Perkins,

569 U.S. 383 (2013) ...................................................................... 13

Mesarosh v. United States,

352 U.S. 1 (1956) ......................................................................... 12

Rozzelle v. Sec'y, Fla. Dep't of Corr.,

672 F.3d 1000 (11th Cir. 2012) .......................................................... 13

United States v. Barsoum,

763 F.3d 1321 (11th Cir. 2014) .......................................................... 12

United States v. Campa,

459 F.3d 1121 (11th Cir. 2006) (en banc) ............................................ 12

United States v. Champion,

813 F.2d 1154 (11th Cir. 1987) ............................................................... 12

United States v. DiBernardo,

880 F.2d 1216 (11th Cir. 1989) ......................................................... 12, 18, 20, 27

United States v. Jernigan,

341 F.3d 1273 (11th Cir. 2003) ............................................................... 12

United States v. Johnson,

327 U.S. 106 (1946) ........................................................................... 12

United States v. Metz,

652 F.2d 478 (5th Cir. Unit A 1981) ................................................. 12, 18, 20, 27

United States v. Person,

721 F.3d 1235 (11th Cir. 2013) ............................................................... 12, 25

United States v. Schlei,

122 F.3d 944 (11th Cir. 1997) .................................................................. 12

**Statutes, Rules, and Other Authorities**

Fed. R. Crim. P. 33 .......................................................................... 11, 13, 26, 27, 30

Fed. R. Crim. P. 33(a) ...................................................................... 11

Fed. R. Crim. P. 33(b)(1) ................................................................. 11

Defendant/Petitioner, proceeding pro se, respectfully submits this fourth supplemental memorandum of law in support of the pending new-trial filings, including Documents 121, 122, 124, 128, 129, 130, and the later supplemental amendment reflected in Document 135, and in relation to the earlier filings from Case No. 3:21-cv-00660-ECM-KFP, particularly Documents 26 and 47.

This memorandum is filed for a limited but important purpose. Earlier memoranda have principally addressed procedural posture, alternative post-judgment vehicles, and related case-management issues. Document 135 separately and expressly clarified that actual innocence is an independent ground and gateway showing, not merely an appendage to ineffective assistance. This memorandum therefore does not repeat at length the arguments already separately set out in Document 135. Instead, it addresses a distinct merits subject that warranted separate treatment: what federal law recognizes as "newly discovered evidence," what does and does not qualify as such, which separate items in the present record are best understood as newly discovered evidence, and how those items support Defendant's innocence and new-trial filings. Some overlap with Document 135 is unavoidable because the same evidentiary record supports both actual innocence and the newly-discovered-evidence analysis, but unnecessary duplication is avoided here.

To the extent any earlier filing may be read as implying that no additional merits memorandum would be submitted, Defendant respectfully clarifies that any such

implication was premature and incorrect. Defendant apologizes for any confusion on that point. This memorandum is intended to assist the Court, not to burden it with unnecessary duplication. It does not supersede, withdraw, or narrow any separately pending filing except to clarify the evidentiary character of the materials already before the Court and to organize the present record more precisely.

Defendant further respectfully states at the outset that this filing proceeds on two related tracks. First, Defendant invokes Federal Rule of Criminal Procedure 33 to the fullest extent the Court concludes that Rule 33 is available on the present record and posture. Second, to the extent the Court concludes that Rule 33 does not supply the complete or proper procedural vehicle for some or all of the requested relief, Defendant respectfully asks the Court to construe the same evidentiary record liberally under whatever post-judgment vehicle is legally available to prevent a fundamental miscarriage of justice, including actual innocence, involuntary-plea principles, and related constitutional protections. Defendant includes this alternative framing in order to strengthen, not dilute, the Court's ability to reach the merits of the evidence.

The strongest and most important evidence in the current record may be summarized briefly at the outset. First, the later-produced September 16, 2019 interview transcript reflects Defendant's agreement with an estimate of roughly eighty videos. Second, the later-produced 2018 FD-302 and related follow-up email materially support

Defendant's position that the email list referred only to videos "from the series," not to all contents. Third, the September 1, 2019 draft letter predating arrest materially supports Defendant's innocence and claim of misunderstanding. Fourth, the November 2019 BOP intake records materially corroborate the claim of coercive abuse and deteriorated condition during the plea period. The remaining materials are also important, but these four items are the strongest and should be treated as the core of the evidentiary presentation.

**I. FEDERAL LAW GOVERNING NEWLY DISCOVERED EVIDENCE, AND THE SCOPE OF RELIEF REQUESTED**

Federal Rule of Criminal Procedure 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires," and that a motion

grounded on "newly discovered evidence" must be filed within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(a), (b)(1).

In the Eleventh Circuit, the familiar five-part Rule 33 test governs. A defendant seeking a new trial based on newly discovered evidence must show that: (1) the evidence was discovered after trial; (2) the failure to discover it earlier was not due to a lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is of such a nature that a new trial would probably produce a different result. United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997); United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003); United States v. Barsoum, 763 F.3d 1321, 1341 (11th Cir. 2014). Failure to satisfy any one element is ordinarily fatal. Schlei, 122 F.3d at 991.

The Eleventh Circuit has also stressed that Rule 33 motions based on newly discovered evidence are "highly disfavored" and should be granted only with "great caution." United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc); Jernigan, 341 F.3d at 1287. That caution matters here, and Defendant does not ask the Court to dilute the Rule 33 standard. Defendant instead submits that the strongest items in the present record satisfy that standard, while several additional items at least qualify as new reliable evidence for actual-innocence and miscarriage-of-justice analysis even if the Court concludes that some particular item is not, standing alone, "newly discovered" in the narrow Rule 33 sense.

Federal law also draws an important line between evidence that is newly discovered and evidence that is merely newly available. The Eleventh Circuit has held that testimony or other information known before trial does not become "newly discovered" merely because it later becomes available in admissible form. United States v. DiBernardo, 880 F.2d 1216, 1224–25 (11th Cir. 1989); United States v. Person, 721 F.3d 1235, 1247–49 (11th Cir. 2013). Former Fifth Circuit precedent binding in this Circuit is to the same effect. United States v. Metz, 652 F.2d 478, 480 (5th Cir. Unit A 1981). Likewise, purely impeaching evidence is ordinarily insufficient. Jernigan, 341 F.3d at 1287; United States v. Champion, 813 F.2d 1154, 1171 (11th Cir. 1987).

At the same time, federal law recognizes that evidence may be "new" even when the underlying events predate conviction. The relevant question is not whether the facts existed earlier, but whether the evidence itself was discovered only later despite diligence. Thus, later-obtained documentary records, transcripts, preserved writings, institutional records, and other preexisting materials can qualify if they were not actually known or reasonably available earlier. Schlei, 122 F.3d at 991; Barsoum, 763 F.3d at 1341. The Supreme Court has also emphasized that the trial court has a central role in evaluating newly discovered evidence and that such motions are reserved for unusual circumstances affecting the reliability of the conviction. United States v.

Johnson, 327 U.S. 106, 111–13 (1946); Mesarosh v. United States, 352 U.S. 1, 9–14 (1956).

Separate from Rule 33, federal habeas and miscarriage-of-justice doctrine uses closely related but not identical language. In Schlup v. Delo, the Supreme Court held that a petitioner may pass through the miscarriage-of-justice gateway by presenting "new reliable evidence" and showing that, in light of all the evidence, old and new, it is more likely than not that no reasonable juror would convict. 513 U.S. 298, 324, 327–28 (1995). House v. Bell reaffirmed that the court must consider all the evidence together rather than item by item in isolation. 547 U.S. 518, 537–38 (2006). McQuiggin v. Perkins likewise recognized that a convincing actual-innocence showing can overcome otherwise applicable procedural bars. 569 U.S. 383, 386, 392–94 (2013).

Those actual-innocence principles matter in this case because the conviction followed a guilty plea. In Bousley v. United States, the Supreme Court held in the § 2255 context that actual innocence means factual innocence, not mere legal insufficiency, and that the doctrine applies in the guilty-plea setting as well. 523 U.S. 614, 623–24 (1998). The Eleventh Circuit has followed the same distinction. Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314–15 (11th Cir. 2012); Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011–12 (11th Cir. 2012); McKay v. United States, 657 F.3d 1190, 1197–99 (11th Cir. 2011).

Accordingly, the Court should keep two propositions distinct. First, some of the materials here qualify, or at least are strongly arguable as qualifying, as newly discovered evidence under Rule 33. Second, several additional materials are at minimum new reliable evidence for actual-innocence and miscarriage-of-justice purposes even if the Court concludes that one or more of them are better described as explanatory, authenticating, or newly presented rather than strictly newly discovered.

This memorandum therefore does not ask the Court to force all pieces of evidence into a single doctrinal box. Rather, it asks the Court to evaluate the strongest materials candidly and to use whatever legally available procedural framing allows the Court to reach the merits of an innocence-based, involuntary-plea-based challenge supported by later-submitted evidence.

**II. OPERATIVE FILING, TIMELINESS, AND RELATIONSHIP TO DOCUMENT 135**

The timeliness issue should be framed clearly. Defendant's position is that Document 26, filed in November 2022 in the § 2255 case, is the operative and timely filing in which Defendant expressly requested that the Court "grant a new trial" and first

submitted the important documentary materials contained in Document 26-1. Documents 47, 121, 122, 124, 128, 129, 130, and 135 should be understood as later amendments, clarifications, supporting evidentiary submissions, and supplemental merits presentations in relation to that earlier filing, rather than as wholly independent and untethered new motions.

This framing is important because it avoids treating Document 121 alone as the sole operative filing date for all newly-discovered-evidence arguments. Document 121 itself expressly asked the Court to construe the earlier filing liberally as a motion for a new trial and explained that Document 26 had already requested that relief and already included newly discovered evidence. The present memorandum follows that same structure and asks the Court to evaluate the current record as a supplemented and clarified presentation built upon Document 26, not as if the evidentiary showing began only with Document 121.

This section also clarifies the relationship of this memorandum to Document 135. Document 135 separately and expressly separates actual innocence as an independent ground and gateway showing. That filing remains important and is incorporated here by reference. This memorandum does not repeat Document 135's full actual-innocence argument. Instead, it addresses the narrower, but still important, question of how the evidence already before the Court should be classified and analyzed as newly discovered evidence, corroborative evidence, or gateway innocence evidence.

Limited overlap is retained only where necessary to explain why a particular piece of evidence matters.

Diligence Showing as to Core Documentary Evidence

As to the relevant page of the September 16, 2019 transcript discussed below in Section III.A, Defendant states, based on his records, recollection, and correlative knowledge and belief, that he did not obtain an actual physical copy of that page until approximately October or November 2022. Defendant further states that, based on his recollection, he had not seen that transcript at all until approximately May 2022, at which time he was able to view the relevant page and make a handwritten copy, but was not initially permitted to possess a physical copy because the material was represented to be protected. Defendant therefore could not reasonably have attached that preserved transcript page to an earlier filing before later obtaining an actual copy.

As to the FD-302 included in Document 26-1, Defendant states, based on his records and correlative knowledge and belief, that he did not obtain a copy of that FD-302 until approximately October 2022, and did not obtain a copy of the related email "list of videos" referenced in that record until approximately November 2022. Those materials were therefore later-obtained documentary records, not materials that Defendant had long possessed but failed to present.

As to the BOP intake records included in Document 121-4, Defendant's records indicate that he did not receive the BOP medical records containing those intake pages, with Defendant's note later added to the first page, until approximately August 5 or August 6, 2024. Defendant then included those records in the first amended new-trial and supplemental filing, Document 121, filed on December 27, 2024. These dates further support that the BOP intake materials were later-obtained institutional records submitted after Defendant was able to obtain them.

**III. THE STRONGEST AND MOST IMPORTANT NEWLY DISCOVERED EVIDENCE FIRST APPEARED IN DOCUMENT 26 AND DOCUMENT 26-1**

Document 26 was filed in November 2022 and expressly requested, in its conclusion, that the Court grant a new trial. The attached Document 26-1 contained the first important packet of documentary material now bearing on the new-trial filings. Document 121 later asked the Court to construe that filing as, or incorporate it into, the new-trial motion, and specifically identified Document 26-1 as containing previously submitted newly discovered evidence.

The critical point is that Document 26-1 did not merely offer later argument. It first placed into the record preserved documentary materials that materially bear on whether Defendant knowingly made the false statement charged in the plea-based

conviction. Those materials remain the foundation of the newly-discovered-evidence analysis.

**A. Later-Obtained Interview Transcript Reflecting an Estimate of Roughly Eighty Videos**

The most important piece is the later-produced interview transcript identified in Document 26-1 and later clarified in Document 121's Exhibit 2. As clarified by Document 121, the transcript passage on Document 26-1 page 2 of 35 reflects an interview on September 16, 2019, during which the questioning and answer proceeded, in relevant part, as follows:

"TFO: And roughly how many videos, are we talking probably at least 30 to 40, cuz I know there were at least 30 to 40 [redacted].

NQ: Yeah there must have been 40 videos on each thumb-drive.

TFO: So we're talking about 80 videos?

NQ: Yeah.

TFO: Okay, um, okay, and so we had roughly 80, do you feel like that's a pretty conservative estimate?

NQ: Yeah."

This is documentary evidence from the government's own records, later produced and later submitted to the Court. It is not merely a fresh recollection created years later. It is a preserved interview record.

Discovery and diligence. The evidence was submitted in Document 26-1, after the plea proceedings and after Defendant later obtained and was able to file the relevant record material. Defendant could not reasonably have attached a preserved government interview transcript before he possessed it. On the present record, the failure to present that transcript during the plea process was not due to a lack of diligence by Defendant in the Rule 33 sense, but because the relevant documentary record was later obtained and later filed.

Materiality. This evidence is material because the plea-based false-statement conviction concerns whether Defendant knowingly made a materially false statement in the September 26, 2018 interview and related follow-up email. The September 16, 2019 transcript tends to undermine the inference that Defendant intentionally understated the number of videos. As Document 121 explains, if Defendant had

knowingly intended to mislead agents about the number of videos in 2018, it is difficult to explain why, when interviewed again on the day of arrest in 2019, he would openly provide a substantially higher estimate. The exculpatory force of this item is not simply that it impeaches an agent. It affirmatively tends to negate knowing falsity and willfulness.

Indeed, the literal wording matters. The record is not a vague paraphrase; it is a preserved exchange in which the agents themselves framed the estimate and Defendant accepted "80 videos" and agreed that this was "a pretty conservative estimate." That later-produced exchange is powerful because it is difficult to reconcile with an intentional scheme to conceal the number of videos.

**B. Later-Obtained 2018 FD-302 and Follow-Up Email Reflecting That the List Sent After the 2018 Interview Concerned Videos "From the Series"**

Document 26-1 also includes the 2018 FD-302 and the related follow-up email. As later explained in Document 121's Exhibit 2, Defendant's position is that the number "37" and the emailed list related only to certain series of videos, not to all materials in the broader research contents. The FD-302 records that Defendant identified two series and certain specific installments. The report states that "Nayef stated the other videos were in two series", and then went on to name the two series, as referenced in the report. "Nayef stated parts four and nine were definitely on the thumb drive, but

was not sure if part 14 was on there or not." The same report then states: "On 09/26/2018, [redacted] received an email from nqashou1@mail.com with a word attachment that contained a list of videos that Nayef stated were on the thumb drive."

Document 121 then sharpened the point by explaining that, as the email showed, Defendant "did not express in that email, 'These represent all of the videos/contents in the contents,' but I explicitly said 'from the series.'" That language matters because it tends to show that the email did not purport to be a complete inventory of all materials, but only a list tied to the particular series then under discussion.

Discovery and diligence. Like the later-produced transcript, these documentary materials were later obtained from the government record and later filed. They are preserved records, not post hoc narrative alone. Defendant could not present the documentary force of these materials before he possessed and attached them.

Materiality. Again, this is not merely impeachment. If the record shows that the follow-up email identified videos from two discussed series rather than purporting to inventory every video in the broader contents, then the government's factual premise for falsity is materially weakened. That goes directly to an element of the offense and to the fairness of the plea-based factual basis.

**C. "Comments on the PSR" and Related Declarations in Document 26-1**

Document 121's amended motion also identified the "Comments on the PSR" and related declarations included in Document 26-1 as part of the evidence supporting innocence and miscarriage of justice. Defendant recognizes that, insofar as those materials consist of his own later declarations or explanations, the Court may view some portions as newly presented or newly available rather than strictly newly discovered under DiBernardo and Metz. But that does not eliminate their significance. They remain explanatory and contextual material attached to, and helping the Court understand, the documentary interview and email records that were newly produced and later filed.

The central point for present purposes is that the core evidentiary force of Document 26-1 does not rest only on post hoc assertion. It rests first on preserved documentary records from the government file, later obtained and later filed, which materially bear on the alleged false statement itself.

**IV. DOCUMENT 47 WAS NOT A NEW EVIDENTIARY SUBMISSION, BUT IT MATERIALLY CLARIFIED THE THEORY OF THE CLAIM**

Document 47 did not chiefly submit a new piece of evidence. Instead, it narrowed and clarified the claim by withdrawing the personal claim of FBI-policy violations against agents and maintaining instead the narrower contention that materially false, embellished, exaggerated, misconstrued, or inaccurate information infected the case. That clarification matters because it sharpened the focus of the later new-trial filings onto the reliability of the information used to support guilt, plea, and sentencing rather than onto collateral accusations against individual agents. In that sense, Document 47 strengthened the evidentiary theory without itself being a principal item of newly discovered evidence.

**V. DOCUMENT 121 IDENTIFIED ADDITIONAL EVIDENCE AND CORRECTLY TREATED DOCUMENT 26-1 AS THE INITIAL EVIDENTIARY FOUNDATION**

Document 121 did three important things. First, it expressly asked the Court to construe the earlier filing as a motion for new trial. Second, it identified Document 26-1 as previously submitted newly discovered evidence. Third, it added additional documentary and declaration materials of its own.

**A. Document 121's Exhibit 2: Actual Innocence Declaration Clarifying the Interview Chronology and the Exculpatory Significance of the Later-Produced Transcript**

Exhibit 2 to Document 121 clarified that the exculpatory transcript passage relied on in Document 26 was from the September 16, 2019 arrest-day interview, not the September 26, 2018 interview referred to in the plea agreement. It further asserted that Defendant did not make the false statement attributed to him in 2018 and that the contrary understanding resulted from conflating different statements made in response to different questions.

The exhibit also emphasized the exact question that, as Defendant recalled, was not posed in the 2018 interview after which he emailed the list: "And roughly how many videos . . . ?" It then argued that the truthful response in the 2019 interview, which "plainly means, 'at least 80 videos,'" is direct exculpatory evidence. That argument gains force from the literal text of the transcript quoted above.

Defendant candidly acknowledges that, insofar as this Exhibit 2 declaration recounts facts that were always personally known to him, the declaration itself may be characterized as newly presented or newly available rather than newly discovered under the strict Rule 33 line of DiBernardo and Metz. But that is not the end of the matter. The declaration directly explains the significance of the preserved interview

transcript and email records, which are documentary materials later obtained and later filed. It therefore serves as a clarifying and explanatory evidentiary submission supporting the genuinely newly discovered documentary evidence.

The practical point is that Exhibit 2 is not presented here as if it were the strongest standalone Rule 33 item. Rather, it is the key interpretive bridge that explains why the later-produced transcript and email records negate the inference of knowing falsity.

**B. Document 121's Exhibit 3: The September 1, 2019 Unsent Draft Letter**

Exhibit 3 to Document 121 is materially different. That exhibit is a preserved draft letter, with attached records, which Defendant says he wrote over the course of months in 2019 about his innocence and his desire to have the investigation ended because he believed the concerns being applied to him were inappropriate. Document 121 emphasizes that the last edit of that letter was saved on September 1, 2019, before the September 2019 arrest, and that the letter therefore predates the indictment, arrest, plea, and present litigation posture. The exhibit contains language reflecting that Defendant was "against anyone who disturbs peace or disturbs the peace/security of peaceful/secure societies," that he was "someone who must be understood and has been misunderstood," and that he had "no inclination towards terrorism or any sort of crime."

Discovery and diligence. The letter is powerful precisely because it is contemporaneous, but its evidentiary significance depends on the fact that it was later preserved, accessed, and submitted to the Court. Defendant explains that the draft was never sent because he was arrested before finishing it. The current record therefore permits the Court to view this not as a freshly invented litigation statement, but as a preserved pre-arrest writing later submitted when Defendant was able to do so.

Materiality. This exhibit is powerful because it is contemporaneous corroborative evidence, not a writing created years later in response to litigation needs. Its probative force lies in the fact that, before the criminal case was opened and before any plea was entered, Defendant had reduced to writing his claim that he was being misunderstood and that he did not have criminal or violent intentions. If this preserved draft and its metadata or associated records became available only later through discovery, retention, or later access, then it is properly arguable as newly discovered documentary evidence. At minimum, it is new reliable corroboration of innocence.

**C. Document 121's Exhibit 4: The November 2019 BOP Intake Records**

Exhibit 4 to Document 121 consists of BOP intake records from two facilities in which Defendant documented, during the pretrial period in 2019, that he had

experienced “emotional abuse” beginning in September 2019. Document 121 explains that by this Defendant meant the trauma and coercive wrongfulness of being indicted, arrested, deprived of liberty, and pressured toward a guilty plea despite innocence. Those records were institutional records created contemporaneously in 2019 and later obtained from BOP. They were not prepared for this litigation.

Discovery and diligence. These are later-obtained institutional records. Their force lies in the fact that they were created contemporaneously by or within an institution and later submitted. They were not crafted as litigation rhetoric. Defendant could not rely on their present documentary force until he later obtained and filed them.

Materiality. These BOP records are among the strongest items in the later filings. They are classic contemporaneous records, created by an institution, later obtained and submitted, and they materially corroborate the claim that coercion and abuse were being experienced months before the plea was accepted. They are not merely cumulative and not merely impeaching. They go directly to the voluntariness of the plea and to why innocence-based defenses were not litigated in ordinary course.

**VI. DOCUMENT 124 WAS AN AUTHENTICATING AND CLARIFYING DECLARATION, NOT A STANDALONE NEWLY DISCOVERED DOCUMENT, BUT IT MATERIALLY STRENGTHENED THE EVIDENTIARY RECORD**

Document 124 declared that the records in Document 121's Exhibits 3 and 4 were authentic, that the letter in Exhibit 3 came from the identified email address, that Defendant could access the relevant email to verify the draft-letter record, that Exhibit 4 consisted of BOP records he received pertaining to himself, and that his note on the BOP form referring to "September 2019" meant the abuse began then and was ongoing.

Strictly speaking, Document 124 is best understood not as an independent piece of newly discovered evidence, but as an authentication and explanation of previously submitted documentary evidence. That does not make it unimportant. On the contrary, it provides the bridge that makes the Court's consideration of Exhibits 3 and 4 more secure. It shows that the September 1, 2019 draft letter and the BOP intake forms are authentic records and clarifies the meaning of the "September 2019" notation in the BOP materials.

This classification is intentional. Defendant does not overstate Document 124 as if it were itself the strongest Rule 33 evidence. Rather, it materially strengthens the Court's ability to credit the core documentary exhibits already identified above.

**VII. DOCUMENT 122, AS LIMITED AND CLARIFIED BY DOCUMENT 129, CONTAINS BOTH IMPORTANT FACTUAL EVIDENCE AND CORROBORATIVE CONTEXT**

Document 122 contains two analytically distinct parts. Document 129 later clarified that the attestation in Document 122 is limited to the factual matters and that the argument portions should be treated as memorandum content rather than affidavit content. Document 129 further states that Part Two remains factual and retains the evidentiary support of an affidavit.

The present memorandum therefore treats Document 122 in a disciplined way. Part Two is treated as important sworn factual evidence relating to plea involuntariness. Part One is treated more cautiously as corroborative contextual material that supports innocence and corrects harmful inferences, but is not presented as the strongest standalone Rule 33 evidence.

**A. Part Two of Document 122: Sworn Factual Testimony About the October 7, 2019 Coercive Episode**

Part Two states that before or on October 7, 2019, Defendant was offered a plea agreement; that counsel discussed signing it even though he perceived his innocence; that during the October 7, 2019 proceeding he was asked to sign the first offered plea agreement before being sent for mental evaluation; that he broke down tremoring and crying; that the magistrate judge remarked that his affect was different; that the reason for the breakdown was that he felt coerced into accepting a felony conviction and false association despite innocence; and that he did not sign at that proceeding despite earlier indicating he would.

Here, too, the literal wording is probative. Document 122 quotes the October 7, 2019 transcript as recording Magistrate Judge Capel's observation: "His affect is a little bit different today, no doubt." Document 122 then states, under oath: "The reason I broke down tremoring and crying, was because I felt I was being coerced, to accept a felony conviction (and a false association with the subject matter of the case) and waiving my rights, despite my innocence." It further states: "I did not sign the plea agreement at that proceeding, despite being asked to, based on a prior understanding with my public defender attorneys that I would sign and accept this offered plea agreement . . . because of perceiving my innocence."

Defendant candidly recognizes that this sworn account concerns facts personally experienced by him and therefore presents a closer Rule 33 question than later-obtained documentary records do. A court could regard this affidavit, standing alone,

as newly presented testimony rather than newly discovered evidence in the strict Rule 33 sense. Even so, this evidence is not free-floating. It is materially corroborated by the transcript reference noted in the affidavit itself and by the contemporaneous November 2019 BOP records later submitted in Document 121 and authenticated in Document 124. Considered together, those materials amount to substantial new reliable evidence of plea involuntariness and miscarriage of justice.

This is therefore one of the items that should at minimum be treated as strong gateway and corroborative evidence even if the Court declines to classify it as core newly discovered evidence under Rule 33.

**B. Part One of Document 122: Sworn Contextual Corrections to Public and Governmental Misrepresentations**

Part One of Document 122 responds to specific defamatory or false understandings attributed to Defendant, including the assertion that what was communicated in September 2019 in relation to service members was false; that Defendant cared about and valued service members and the United States; that he was and remains patriotic in a morally bounded sense; and that many harmful inferences arose from statements taken out of context, hypothetical questioning, and misunderstanding of the humanitarian and research-related purposes behind his conduct.

These sworn contextual corrections support innocence because they challenge guilt-related inferences and motive-related assumptions embedded in the case narrative. But again, Defendant acknowledges that the strictest Rule 33 characterization of these later-filed sworn clarifications is more debatable than the characterization of later-obtained records such as transcripts and institutional documents. The most prudent description is that Part One materially supplements the innocence showing and helps the Court understand why the later-discovered records matter; it is not the strongest standalone Rule 33 item.

That disciplined classification is especially important to avoid overloading this memorandum with collateral or reputational disputes that are not necessary to decide the central issues. Defendant therefore relies on Part One only to the extent it materially assists the Court in understanding innocence and context.

**VIII. DOCUMENT 128, AS AMENDED BY DOCUMENT 130, FURTHER SUPPORTS INNOCENCE AND MISCARRIAGE OF JUSTICE**

Document 128 should be considered, but with the important qualification supplied by Document 130. Document 130 withdrew Document 128's status "as an affidavit" while preserving it as an innocence memorandum with attached evidentiary support,

and expressly stated that the declaration on page 66 of Document 128 still confers evidentiary value in support of innocence.

**A. Excerpts from the Pre-Sentencing Letter to Judge Marks**

Document 128 includes excerpts from a longer draft letter written before the September 17, 2020 sentencing hearing. Those excerpts state, among other things, that the PSR did not provide an accurate understanding of Defendant; that certain phrases attributed to him were foreign to him; that controversial content had been part of general research; and that the sharing of research contents had been undertaken for what he understood as legitimate purposes rather than to encourage wrongdoing.

Because this writing predates sentencing and predates the present litigation posture, it is significant corroborative evidence of a contemporaneous innocence and misunderstanding narrative. As with the September 1, 2019 draft letter, Defendant recognizes that a court may ask whether a self-authored writing retained in one's own records is strictly "newly discovered." The stronger point is that this is a preexisting, contemporaneous writing now submitted as evidence, not a narrative first invented years later.

**B. The 2020 Blog Posts and the Page-66 Declaration Authenticating Them**

Document 128 also includes and discusses three 2020 blog posts—"Half of a Conversation," "A Very Personal Message," and "No citizen should have to go through this"—together with a declaration on page 66 attesting that the blog information is true, that the posts are authentic records, and that they reflected Defendant's true and honest expression at the time. Document 130 expressly preserved the evidentiary value conferred by that page-66 declaration.

These blog posts matter because they are date-stamped writings from 2020, not created for this present 2025–2026 round of post-judgment filings. They reflect an ongoing claim that Defendant was being misrepresented and was suffering a manifest injustice. They therefore provide additional contemporaneous corroboration that his innocence-related position did not emerge only after later strategic reflection. At minimum, they are new reliable evidence in the Schlup/House sense even if the Court declines to classify each as newly discovered under the narrowest Rule 33 doctrine.

**C. Argument Sections of Document 128**

The Court should distinguish the evidentiary from the argumentative parts of Document 128. The memorandum's analytical sections addressing the PSR, search-warrant affidavit, and sentencing materials are primarily argument and contextual explanation after Document 130's amendment. They remain useful, but they are not

all standalone evidence. The Court can nevertheless rely on them to understand the probative force of the evidentiary items attached to or authenticated by the filing.

Again, Defendant does not overstate this filing. Document 128 is important, but the present memorandum treats it primarily as corroborative and contextual support rather than as the core of the Rule 33 presentation.

**IX. WHAT IN THIS RECORD MOST PLAUSIBLY COUNTS AS "NEWLY DISCOVERED EVIDENCE," AND WHAT IS BETTER DESCRIBED AS AUTHENTICATING, EXPLANATORY, OR GATEWAY EVIDENCE**

For clarity, Defendant respectfully submits the following classification.

Most defensible Rule 33 newly discovered evidence:

(1) the later-produced interview transcript in Document 26-1 reflecting the September 16, 2019 "roughly 80 videos" exchange;

(2) the later-produced 2018 FD-302 and related email records in Document 26-1 bearing on what was and was not being counted or described;

(3) the later-obtained BOP intake records submitted as Exhibit 4 to Document 121; and

(4) to the extent later access, preservation, or metadata recovery is credited, the September 1, 2019 draft letter submitted as Exhibit 3 to Document 121.

Strong corroborative or gateway evidence, even if the Court concludes it is not strictly newly discovered under Rule 33:

(1) Document 121's Exhibit 2 actual-innocence declaration clarifying the chronology and evidentiary significance of the transcript and email records;

(2) Document 124's authenticating declaration;

(3) Document 122 Part Two's sworn factual account of the October 7, 2019 coercive episode, especially as corroborated by the transcript reference and BOP records;

(4) Document 122 Part One's sworn corrections of guilt-related misrepresentations;

(5) the pre-sentencing draft letter excerpts in Document 128; and

(6) the authenticated 2020 blog posts and page-66 declaration in Document 128 as preserved by Document 130.

This classification is important because it is candid and consistent with controlling law. Defendant does not ask the Court to ignore DiBernardo, Metz, or the cautionary Rule 33 cases. Defendant instead submits that the present record contains both categories: core later-discovered documentary evidence and additional new reliable evidence that materially strengthens the actual-innocence and involuntary-plea showings.

This disciplined classification also serves an important case-management function. It allows the Court to focus first on the strongest documentary items without becoming distracted by disputes about whether every later declaration or explanatory filing is itself "newly discovered" in the strictest sense.

**X. INDEPENDENT CONSTITUTIONAL SIGNIFICANCE OF THE NEW EVIDENCE: INVOLUNTARY AND UNKNOWING PLEA**

Even apart from Rule 33, the same evidentiary record has independent constitutional significance because it materially supports the claim that Defendant's guilty plea was not knowing and voluntary.

A guilty plea is valid only if it is knowing, voluntary, and intelligent. Brady v. United States, 397 U.S. 742, 748 (1970). At the same time, post-conviction allegations may warrant relief when specific facts, not bare conclusions, show that the plea was not voluntary. Blackledge v. Allison, 431 U.S. 63, 73–76 (1977).

Document 135 already separately and expressly develops actual innocence as an independent ground. Defendant incorporates that filing here rather than re-arguing it at length. The present point is narrower: the new evidentiary record now before the Court independently strengthens the involuntary-plea claim.

The later-obtained BOP intake records show that by November 2019 Defendant was documenting "emotional abuse" beginning in September 2019. Document 124 authenticates and clarifies those records. Document 122 Part Two then supplies a specific sworn account tied to the October 7, 2019 proceeding. That sworn account does not merely assert, in conclusory fashion, that the plea was involuntary. It identifies a specific event, a specific courtroom reaction, a specific transcript-linked observation by the Magistrate Judge, and a specific explanation of why Defendant broke down when confronted with the plea process despite perceiving his innocence.

The later-produced transcript and email-related records also matter to voluntariness because they materially support Defendant's contention that he was pleading guilty against a false or materially distorted understanding of the facts underlying the offense. A guilty plea entered while materially exculpatory evidence remains undeveloped or misunderstood is not strengthened merely because it was later repeated in formal proceedings. The new evidence therefore bears not only on innocence, but on whether the plea rested on a reliable factual basis and on a sufficiently knowing and voluntary waiver.

This memorandum does not repeat at length the broader actual-innocence arguments already separately briefed in Document 135. It instead emphasizes that the same evidentiary record, viewed independently, materially strengthens the constitutional challenge to the plea itself.

**XI. THE EVIDENCE IS MATERIAL AND, VIEWED CUMULATIVELY, COULD PROBABLY PRODUCE A DIFFERENT RESULT**

The present conviction is plea-based, but the substance of the new evidence still matters because it goes directly to whether Defendant in fact knowingly made the false statement charged and whether the guilty plea rested on a reliable factual basis.

First, the later-produced transcript and email-related records materially undermine the government's theory of falsity and willfulness. The transcript does not merely suggest uncertainty. It records an affirmative numerical estimate: "there must have been 40 videos on each thumb-drive," followed by agreement that the agents and Defendant were "talking about 80 videos," and further agreement that this was "a pretty conservative estimate." That preserved record strongly supports the proposition that the alleged false statement may have resulted from conflating different statements about different subsets of videos or different questions asked at different times rather than from a knowing lie.

Second, the September 1, 2019 draft letter and the 2020 writings materially support innocence because they predate or closely track the plea and sentencing period and show that Defendant was already protesting misunderstanding, violence-related mischaracterization, and criminal inferences before the present post-judgment litigation matured. Their force lies in contemporaneity.

Third, the BOP intake records, the later authenticating declaration, and the October 7, 2019 sworn account materially support the contention that Defendant's plea was the

product of coercive pressures experienced long before final judgment. The transcript-linked affidavit is especially important because it ties an observable courtroom event to Defendant's later sworn explanation. The contemporaneous transcript reference —"His affect is a little bit different today, no doubt"—corroborates that something significant occurred during the October 7 proceeding, while the later sworn statement explains why: Defendant states he "broke down tremoring and crying" because he felt "coerced" to accept a felony conviction and waive his rights "despite my innocence." Those materials explain why an innocence claim and factual defense were not fully and coherently litigated earlier.

Fourth, under House and Schlup, the Court should not atomize the evidence. The relevant question is the cumulative force of all the evidence, old and new. When the later-produced government records, the contemporaneous pre-arrest letter, the contemporaneous institutional BOP records, the later authenticating declaration, the October 7 factual affidavit, and the authenticated 2020 writings are viewed together, Defendant submits that there is at minimum a substantial probability that the factual basis of guilt would look materially different to a factfinder and that no reasonable juror would confidently convict on the same understanding reflected in the plea.

That conclusion is reinforced by Bousley's distinction between factual innocence and mere legal insufficiency. Defendant's point is not only that some legal rule was misapplied. It is that the underlying factual narrative of guilt was materially distorted

by misunderstandings, conflations, and omitted context, and that later-submitted records now bear directly on that problem.

At minimum, the present record warrants full merits consideration and a focused evidentiary hearing if the Court concludes that any material factual dispute remains. A limited hearing would be especially appropriate as to the provenance and timing of the core documentary materials, the significance of the September 16, 2019 interview transcript and the September 26, 2018 email-related records, and the October 7, 2019 coercive episode described in Document 122 and corroborated by the BOP records.

**XII. RELIEF REQUESTED**

For the foregoing reasons, Defendant respectfully requests that the Court:

(1) accept this Fourth Supplemental Memorandum of Law as a limited supplemental merits brief specifically addressing newly discovered evidence and related new reliable evidence supporting the pending new-trial filings;

(2) clarify that, to the extent any earlier filing suggested that no further merits memorandum would be submitted, such a suggestion was premature and should not be understood as a waiver of this distinct evidentiary issue;

(3) treat Document 26 as the operative, timely filing requesting a new trial and treat Documents 47, 121, 122, 124, 128, 129, 130, and 135 as supplemental, clarifying, and supporting filings in relation to that request;

(4) consider Rule 33 to the fullest extent the Court concludes that Rule 33 is available on the present record and posture, but, to the extent the Court concludes that Rule 33 does not supply the complete or proper procedural vehicle for some or all of the requested relief, construe the same evidentiary record under whatever post-judgment vehicle is legally available to prevent a fundamental miscarriage of justice;

(5) recognize that the record contains core documentary items that are properly arguable as newly discovered evidence under Rule 33, especially the later-produced interview and email-related records and the later-obtained BOP records, together with additional authenticating and corroborative evidence supporting innocence and involuntary-plea principles;

(6) consider the cumulative force of Documents 26, 47, 121, 122, 124, 128, 129, 130, and 135, rather than isolating each piece of evidence from the others;

(7) hold that the present filings make at least a sufficient showing to warrant full merits consideration and, if necessary, a focused evidentiary hearing; and

(8) if the Court concludes that any material factual dispute remains, set a limited evidentiary hearing directed to the provenance, timing, and significance of the core documentary materials and the October 7, 2019 coercive episode, rather than denying relief on an undeveloped record; and

(9) grant such further relief as justice requires to prevent the continued effect of a conviction alleged to rest on factual innocence, materially false premises, and an involuntary guilty plea.

Respectfully submitted this 13th day of April 2026,



Nayef Amjad Qashou

Defendant/Petitioner, pro se

Case No. 3:19-cr-364-ECM

## Certificate of Service

I, Nayef A. Qashou, certify that a true and correct copy of the foregoing document, Defendant's Fourth Supplemental Memorandum of Law in support of pending New-Trial filings, specifically addressing Newly Discovered Evidence , was submitted to the United States Postal Service, for regular first-class mailing and with verified payment, on this 13th day of April 2026, to be served on the following:

United States Attorney's Office

P.O. Box 197

Montgomery, AL 36101-0197

Sincerely,

[signature]

Date: 4/13/2026